## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DIVISION OF TENNESSEE
## EASTERN DIVISION AT JACKSON

| | | |
|---|---|---|
| **THIDA WHIRLEY as Personal** | ) | |
| **Representative and Administratrix of the** | ) | |
| **ESTATE OF WILLIAM MORTON** | ) | |
| **WHIRLEY, deceased,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION NO.:** |
| v. | ) | |
| | ) | **04-1145-T-An** |
| **KAWASAKI MOTORS CORPORATION,** | ) | |
| **U.S.A. d/b/a Kawasaki and JIM BENNETT** | ) | |
| **CORINTH, INC. d/b/a  Jim Bennett** | ) | |
| **Kawasaki and/or Jim Bennett Corinth** | ) | |
| **Kawasaki,** | ) | |
| | ) | |
| Defendants. | ) | |

## REVISED FIRST AMENDED COMPLAINT

COME NOW the Plaintiff and, in accordance with the court's order filed December 29, 2005,  amends the complaint previously filed in this action as follows:

## PARTIES AND JURISDICTION

1.     Plaintiff Thida Whirley is the personal representative and administrator of the estate of William Landon Whirley, deceased, and brings this action on behalf of any and all parties who may be entitled to recover hereunder pursuant to Tennessee law, including the parents and children of the deceased and the deceased's estate.     The deceased is survived by is survived by two minor children, William Landon Whirley and Leslie Brooke Mccullar, and his two natural parents,  Joe and Thida Whirley.      Per

Tennessee law, one element of the pecuniary value of the deceased's life is the value of all surviving loss of consortium claims. The State of Tennessee recognizes loss of consortium claims for both the surviving children, see <u>Jordan v. Baptist Three Rivers Hospital</u>, 948 S.W. 2d 593 (Tenn. 1999), and for the surviving parents, see <u>Rothstar v. Orange Grove</u>, 60 S.W. 3d 807 (Tenn. 2001).

2.    Defendant, Kawasaki Motor Corporation U.S.A. d/b/a Kawasaki (hereinafter "Kawasaki") is a corporation doing business in the State of Tennessee. At all times mentioned herein, Kawasaki was engaged in the business of manufacturing, distributing, and selling Kawasaki brand All Terrain Vehicles ("ATV's") to the general public. Kawasaki is the American face of all Kawasaki companies involved in the manufacture of Kawasaki brand ATVs, and frequently represents the Kawasaki companies in litigation and on industry-related issues. Kawasaki (along with several parent, sister, or affiliated companies) also does business under the general trade name "Kawasaki," and said trade name is commonly used interchangeably by both the defendant and the general public to refer to Kawasaki Motor Corporation, U.S.A and to its parent, sister, or affiliated companies which are involved in the manufacturing of Kawasaki brand ATVs. Accordingly, "Kawasaki" and "Kawasaki Motor Corporation, U.S.A." are trade names, agents, or alter-egos for business entities within the Kawasaki family of companies involved in the manufacturing, distribution, and sale of Kawasaki brand ATVs.

3.    Jim Bennett Corinth, Inc. d/b/a Jim Bennett Kawasaki and/or Jim Bennett Corinth Kawasaki (hereinafter "Jim Bennett") is an authorized agent, dealer, distributor, and/or seller for defendant Kawasaki. Jim Bennett is operating and doing business in

Corinth, Mississippi.

## FACTS

### A) GENERAL BACKGROUND OF ATV LITIGATION

4.    Since the introduction of the ATV in the mid 1970's, there have been thousands of ATV-related deaths and injuries in the United States.   The number of reported deaths and injuries associated with ATV use caused many observers, including the Consumer Product Safety Commission ("CPSC"),  to conclude that the ATV was an inherently dangerous vehicle, especially for children under the age of 16.

5.    On May 31, 1985, the CPSC issued an advance notice of proposed rulemaking to govern the ATV industry.  That notice was published by the CPSC in the *Federal Register* at 50 FR 23139, and contained a determination that there was an unreasonable risk of injury associated with the use of ATVs sufficiently severe to require regulatory action by the CPSC.

6.    On December 30, 1987, after representatives of the ATV industry failed to implement voluntary standards governing design, manufacture,  and sale of ATVs, the United States government at the behest of the CPSC filed a lawsuit against Kawasaki and other major manufacturers and distributors of ATVs in the United States.  That suit, styled United States of America v. American Honda Motor Co., Inc. et al., CV 87-3525 was filed in the United States District Court for the District of Columbia.    In its complaint, the government alleged that ATVs were inherently dangerous or otherwise constituted an imminent hazard within the meaning of Section 12 of the Consumer

3

Product Safety Act.   The gist of the government's complaint was that ATVs appear relatively benign, but are actually unique and complex, and require a high degree of skill and constant attentiveness for safe operation.   The government alleged that the peculiar behavioral properties of ATVs, when coupled with their deceptively "safe" outward appearance, resulted in a high risk of injuries to users.

7.   In its complaint, the government also claimed that Kawasaki and the other defendants failed adequately to warn potential ATV users about the hazards presented by the ATVs.   The government alleged that television and print advertisements picture ATVs as "family fun vehicles" which pose little danger to their operators, and that little safety information is imparted through industry marketing practices.   The government alleged that Kawasaki's current labeling practice was inadequate, and that the industry's training course had not been properly promoted and, therefore, was not utilized by a significant number of ATV purchasers.

8.   Rather than risk litigation, Kawasaki and the other defendants entered into a Final Consent Decree with the United States on April 28, 1988 which contained far reaching and comprehensive relief designed to reduce the risk of injury associated with ATV usage.   Provisions of the Final Consent Decree included, but were not limited to, the following:

a)   A ban on the sale of three-wheel ATVs;

b)  The implementation of an agreed upon nation-wide training program for purchasers of ATVs;

c)  The implementation of a public awareness campaign costing approximately $ 8,500,000 and consisting of print and network, cable, and

4

spot television advertising;

d)  The development and implementation of improved labeling, improved Owner's Manuals, and improved "point of purchase" safety materials designed to better inform ATV operators of the hazards associated with ATV usage;

e)  The implementation of a toll-free ATV hotline service to respond to consumer inquiries;

f)  The implementation of an outreach program to disseminate safety materials to consumer groups;

g)  Agreed upon age recommendations for operating ATVs to prevent young children, who are at greatest risk, from riding the wrong-sized ATV; and

h)  The implementation of a dealer-monitoring and supervision program whereby the defendants were to use their "best efforts" to insure that their dealerships complied with the provisions of the Final Consent Decree.

9.    The Final Consent Decree was effective against the defendants for ten years. One of the provisions of the Final Consent Decree required the defendants to reach agreement on voluntary standards for ATVs which were satisfactory to the CPSC.   These voluntary standards ("Voluntary Standards") were approved and published by the CPSC in the *Federal Register* on January 13, 1989 in 54 FR1407.

10.    Upon its expiration in 1998, the Final Consent Decree was replaced by the ATV Action Plan, which essentially was a voluntary agreement by Kawasaki and the other defendants to continue abiding by the more significant provisions of the Final Consent Decree.   Each defendant submitted its own ATV Action Plan for approval by the CPSC.   The ATV Action Plan submitted by Kawasaki was approved and published by the CPSC in the *Federal Register* on September 9, 1998 at 63 FR 48199.

5

*B) WILLIAM WHIRLEY'S ACCIDENT*

11.   On or about February 7, 2002,  the deceased William Morton Whirley purchased a Kawasaki Prairie 650 ATV from Jim Bennett in Corinth, Mississippi.

12.   On or about June 7, 2003, the deceased was killed when his Prairie 650 unexpectedly overturned while being operated in reverse.   The accident occurred in McNairy County, Tennessee.

13.   The Prairie 650 was equipped by Kawasaki with a reverse override button that allowed the ATV to reach top speed, or an otherwise unsafe speed,  in reverse.  The reverse override button was a brand new feature added to 2002 Kawasaki brand ATVs, and the danger it posed was unknown by purchasers of the ATVs, including the deceased. The override button was either negligently designed or manufactured causing the Prairie 650 to be unreasonably dangerous.

14.   At the time of the accident, the deceased was traveling in reverse and because of the defective design or manufacture of the reverse override button, his Prairie 650 reached an unsafe and unexpected speed in reverse causing his ATV to shift back and forth until it crashed.  The deceased died sometime after the crash.

15.   At the time of the sale, the defendants failed to provide the deceased with any sort of safety training or instruction regarding proper use of the ATV.  Defendants did not conduct a required safety meeting with the deceased, did not display safety posters, did not bring the safety warnings contained in the ATV Rider Training Certificate to the deceased's attention, did not provide the deceased with any safety videos or materials,

6

nor did they review the materials in the ATV's Owner's Manual with the deceased. Instead, the defendants or their representatives forged the signature of the deceased onto the ATV Training Certificate to make it appear as though the defendants provided the required safety training or instruction.   In doing so, defendants violated the numerous terms and standards set forth in the <u>Final Consent Decree</u>, the <u>Voluntary Standards</u>, Kawasaki's <u>ATV Action Plan</u>, and the dealership agreement between the defendants (hereinafter collectively referred to as "the Governing Documents").

16.   Upon information and belief, it is a pattern and practice of the defendants, especially defendant Jim Bennett, not to provide required safety training, instruction, and information to purchasers of Kawasaki brand ATVs in order to avoid discouraging customers from purchasing the ATVs.  In fact, one of Jim Bennett's competitors in the local ATV market is located adjacent to the Jim Bennett dealership.   Upon information and belief, it is a further practice of Jim Bennett to forge the signatures of its customers onto the ATV Rider Training Certificates when no such training session was conducted.

17.   Moreover, the defendants were well aware of the fact that the majority of ATV users do not wear helmets when operating ATVs, which is one of the principle reasons safety training and safety materials are required by the Governing Documents. According to the findings attached to Kawasaki's own <u>ATV Action Plan</u>,  only 35% of ATV users always wear a helmet while 65% of users occasionally or never wear a helmet.   Moreover, 32% of users report never wearing a helmet.  Consistent with the national trend, it is a common practice in the deceased's area of residence for ATV riders not to wear a helmet when operating ATVs, and Tennessee law does not require helmet

use.  Despite being aware of this common practice among ATV riders,  the defendants still failed to adequately warn the deceased about the dangers of the ATV.

18.   Per the Governing Documents,  Kawasaki was under a duty to monitor and supervise its dealerships, and to insure that proper safety training, instruction, and information was provided to each purchaser of Kawasaki brand ATVs at the Jim Bennett dealership.   Kawasaki negligently, recklessly, fraudulently, or intentionally failed to supervise the Jim Bennett dealership, and "looked the other way" as the Jim Bennett dealership violated the Governing Documents in an attempt to boost sales.   Kawasaki has taken no remedial action against Jim Bennett for its conduct, and itself has directly violated the provisions of the Governing Documents.

19.   As determined by the CPSC, ATVs such as the Prairie 650 are inherently dangerous products.  However, the Prairie 650 sold to the deceased was made even more unreasonably dangerous and defective at the time it was manufactured and/or sold because of inherent defects in the product itself.  Examples of these inherent defects include, but are not limited to, the following:

a)  The introduction of the reverse override button which was brand new to the 2002 Kawasaki model ATVs.  The very existence of the reverse override button and/or the capability of the Prairie 650 to reach top speed, or an otherwise unsafe speed, in reverse constitutes a defect in and of itself.   There is no reason that an ATV should be capable of operating at full or high speed in reverse.  The ordinary consumer would not expect the ATV to be capable of operating at top speed,  or an otherwise unsafe speed, in reverse.

b)   The location and placement of the reverse override button was not placed in a human-factors-friendly location, was diametrically opposite from where it should have been, and aggravated the reverse motion by thrusting the body forward when engaged. The ordinary consumer would not expect the reverse motion of the ATV to be aggravated by the placement of the reverse override button.

c)   The Prairie 650 has a tendency to overturn or flip over backwards when operated at high speed in reverse, especially when the brakes are applied.  The ordinary consumer has no expectation that the Prairie 650 would likely flip over backwards if the brakes were applied while operating in reverse.

20.   The Prairie 650 was also unreasonably dangerous and defective at the time it was manufactured and/or sold to the deceased because the deceased was not supplied with adequate safety materials, warnings, and instructions as required by the Governing Documents and the ordinary expectations of the consumer.   Examples of these inadequacies include, but are not limited to, the following:

(a)   The safety warnings and instructions in the Owner's Manual were inadquate to apprise the deceased of the nature of the risks associated with operating the Prairie 650 ATV. Without sufficient warnings in the Owner's Manual,  the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(b)   The defendants did not offer free hands-on training to the deceased or to members of the deceased's immediate family through the current ATV Safety Institute training course.   These safety materials were an integral component of the Prairie 650, and were required for its safe operation.  Without these safety materials, the Prairie 650

constituted a defective product regardless of the existence or nonexistence of any other defect.

(c)   The defendants did not provide the deceased with the safety videotape required by Kawasaki's <u>ATV Action Plan</u>.   These safety materials were an integral component of the Prairie 650,  and were required for its safe operation.   Without these safety materials, the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(d)   The defendants did not provide the deceased with information that conveys the substantive safety message contained in the current "ATV Safety Alert" as required by Kawasaki's <u>ATV Action Plan</u>.   These safety materials were an integral component of the Prairie 650,  and were required for its safe operation.   Without these safety materials, the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(e)   The defendants did not require the deceased to view the ATV Safety Video at the dealership as required by Kawasaki's <u>ATV Action Plan.</u>   These safety materials were an integral component of the Prairie 650,   and were required for its safe operation.   Without these safety materials, the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(f)   The defendants did not provide the deceased with the Interactive CD-ROM as required by Kawasaki's <u>ATV Action Plan</u>.     These safety materials were an integral component of the Prairie 650,  and were required for its safe operation.   Without these safety materials, the Prairie 650 constituted a defective product regardless of the

existence or nonexistence of any other defect.

(g)  The defendants did not mail the Safety Reminders to the deceased as required by Kawasaki's <u>ATV Action Plan</u>.   These safety materials were an integral component of the Prairie 650,  and were required for its safe operation.  Without these safety materials, the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(h)  The defendants did not provide the deceased with the warnings contained in the ATV Rider Training Certificate, nor did they explain the warnings to him as represented in the Certificate.   Instead, the defendants forged the deceased's signature in an attempt to make it appear as though the warnings had been given.   These safety warnings were an integral component of the Prairie 650,  and were required for its safe operation.  Without these safety warnings, the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(i)  The defendants did not provided the deceased an opportunity to view the safety poster containing ATV death statistics which, per the <u>Final Consent Decree</u>, was to be displayed at the Jim Bennett dealership. This safety poster was an integral component of the Prairie 650,  and was required for its safe operation.  Without this safety poster, the Prairie 650 constituted a defective product regardless of the existence or nonexistence of any other defect.

(j)  The defendants did not provide the deceased with any other discretionary or mandatory "point-of-purchase" safety materials set forth in the Governing Documents. These safety materials were an integral component of the Prairie 650,  and were required

for its safe operation.   Without these safety materials, the Prairie 650 constituted a
defective product regardless of the existence or nonexistence of any other defect.

(k)  The Prairie 650 did not come with or was not labeled with adequate safety
warnings regarding operation of the ATV.  Moreover, the defendants did not provide the
deceased with adequate safety warnings and instructions.   Examples of safety warnings
not given include, but are not limited to, the following:

> 1 – The deceased was not adequately warned or instructed that the Prairie
> 650 was capable of reaching top speed or an unsafe speed in reverse.
>
> 2 – The deceased was not adequately warned or instructed that the Prairie
> 650 would likely fish-tail and overturn within a few seconds if the Prairie
> 650 were operated in reverse at moderate or high speeds.
>
> 3 – The deceased was not adequately warned or instructed that the Prairie
> 650 would experience an immediate burst of speed in reverse if the reverse
> override button were engaged while the throttle was turned up.
>
> 4-   The deceased was not adequately warned or instructed on the
> heightened danger of using the reverse override button while on a paved
> surface.  Specifically, the deceased was not warned that the ATV engine
> was designed to operate on surfaces which give way, and that the ATV was
> virtually guaranteed to flip over backwards if operated at high speed in
> reverse while on pavement.
>
> 5-  The deceased was not adequately warned or instructed never to apply
> the rear brakes while operating the ATV at high speed in reverse.
> Specifically, the deceased was not warned that his ATV almost certainly
> would flip over backwards if rear brakes were applied while operating the
> ATV at high speed in reverse.
>
> 6 – The deceased was not warned or instructed that the reverse override
> switch was potentially dangerous, and that extreme caution should be used
> any time the reverse override button was engaged.
>
> 7 – The deceased was not warned or instructed on the relevant dangers of a
> forward turnover versus a side or backward turnover in that a side or
> backward turnover carries a greater risk of striking and injuring the back

base of the skull resulting in a greater risk of injury to the brain stem and increased likelihood of death.

8 – The deceased was not adequately warned or instructed that he should not drive the Prairie 650 until after he had read the Owner's Manual.

9 – The deceased was not adequately warned or instructed not to drive the Prairie 650 after consuming alcohol or other drugs.

10 – The deceased was not adequately warned or instructed not to drive the Prairie 650 without wearing a helmet, eye protection, and protective clothing.  The deceased was also not adequately warned or instructed that he should use a helmet despite the defendants knowledge of the common practice by ATV riders in the area not to use a helmet when operating an ATV.

11 – The deceased was not adequately warned or instructed on the increased need, due to the likelihood of a backward or side turnover and injury to lower base of the skull,  to wear a helmet anytime the Prairie 650 was being operated in reverse with the reverse override switch engaged.

12 – The deceased was not adequately warned or instructed on the increased likelihood of turnover anytime the Prairie 650 was operated at speeds too fast for the user's riding skills or road conditions.

13 – The deceased was not adequately warned or instructed not to drive the Prairie 650 on a public road or paved surface.

14 – The deceased was not warned or instructed about the nature of the risk in operating an ATV on a paved surface.   Specifically, the deceased was not informed that operation of the Prairie 650 on a paved surface actually increases, rather than reduces,  the risk of turnover because the ATV is designed and manufactured to operate on loose surfaces and soils which give way.   The deceased was given no warnings or instructions to dispel the erroneous but commonly held assumption that an ATV is more likely to turnover when operated on rough or bumpy, off-road terrain than when operated on a smooth,  paved surface.

15 – The deceased was not adequately warned or instructed that the Prairie 650 handles differently from other motor vehicles, including motorcycles and cars.

16 – The deceased was not informed that Kawasaki offered a free ATV

Rider Training Course to learn ATV riding skills or to reinforce his existing
skills.

21.   The defendants' conduct was in violation of the safety agreements and related
provisions contained in the "Dealer Sales and Service Agreement" which was in effect
between the parties at the time the deceased purchased the Prairie 650 and at the time of
the deceased's accident.

22.   The defendants' conduct was also in violation of the above-referenced <u>Final
Consent Decree</u>, <u>Voluntary Standards</u>, and the Kawasaki <u>ATV Action Plan</u>.

## COUNT I

### (Strict Liability)

23.   Plaintiff realleges and adopt by reference the averments contained in
paragraphs 1-22, inclusive, the same as if fully set out herein.

24.   At the time the deceased purchased his Kawasaki Prairie 650 it was defective
in its design and manufacture and was unreasonably dangerous or unsafe for its intended
purpose.  The Prairie 650 was defectively designed, manufactured, and was unreasonably
dangerous because of the reverse override button's existence, placement, and location,
the inadequate warnings and instructions provided by the defendants, and because of the
reasons set forth in paragraphs 4-22 above.

25.   Kawasaki and Jim Bennett are both manufacturers and sellers of the Prairie
650 for purposes of the <u>Tennessee Products Liability Act of 1978</u>, codified at T.C.A. §§

29-28-101 et seq.  Kawasaki has consistently represented itself as a manufacturer in courts of other jurisdictions, and operates or has operated under the trade name or as the alter-ego or agent of its parent, sister, and affiliated Kawasaki companies involved in the manufacturing process.  Jim Bennett participates in the final assembly of the product by getting the ATV ready for showroom display and operation, and by providing or failing to provide the Owner's Manual and other safety information which are essential components for the safe operation of the ATV.  Moreover,  pursuant to the "Dealer Sales and Service Agreement" Jim Bennett was charged with the responsibility for installing certain safety devices as well as all other devices not supplied by Kawasaki as standard equipment.

26.  As a direct and proximate result of the defendants' tortious conduct as set forth in paragraphs 4 – 22 above,  the deceased was injured and ultimately died from his injuries.  The above described conduct of each defendant combined and concurred, and as a proximate consequence thereof, the plaintiff's beneficiaries and decedent have suffered great pain and suffering, emotional distress, mental anguish, and monetary damages.

27.  As manufacturers, the defendants are strictly liable in tort for their tortious conduct and for plaintiff's injuries and damages.   Alternatively, the defendants are strictly liable because the true manufacturer is not subject to service of process in the state of Tennessee,  service cannot be secured by the long-arm statutes of Tennessee, or is defunct, dissolved, or otherwise judicially declared insolvent.

WHEREFORE, plaintiff demands judgment against the defendants in an amount not less than $ 10,000,000 in compensatory damages, together with the costs of this

proceeding, and other such relief as they may be entitled.

## COUNT II

### (Negligence)

28.   Plaintiff realleges and adopt by reference the averments contained in paragraphs 1-27, inclusive, the same as if fully set out herein.

29.   Defendants distributed and/or sold a defective product to the deceased, and otherwise engaged in tortious conduct as set forth in paragraphs 4 – 22 above.

30.   As a direct and proximate result of defendants' tortious conduct, the deceased was injured and ultimately died from his injuries.   The conduct of each defendant combined and concurred, and as a proximate consequence thereof, the plaintiff's beneficiaries and decedent have suffered great pain and suffering, emotional distress, mental anguish, and monetary damages.

31.   The defendants' conduct was negligent, grossly negligent, reckless, wanton, willful and/or intentional.

WHEREFORE, plaintiff demands judgment against the defendants in an amount not less than $ 10,000,000 in compensatory damages, together with the costs of this proceeding, and other such relief as they may be entitled.

## COUNT III

### (Negligence - Failure to Warn)

32.   Plaintiff realleges and adopt by reference the averments contained in

paragraphs 1-31, inclusive, the same as if fully set out herein.

33.   Defendants failed to adequately warn or instruct the deceased of the dangerous and defective condition of the Kawasaki Prairie 650, and otherwise engaged in tortious conduct as set forth in paragraphs 4 – 22 above.

34.   As a direct and proximate result of defendants' tortious conduct, the deceased was injured and ultimately died from his injuries.   The conduct of each defendant combined and concurred, and as a proximate consequence thereof, the plaintiff's beneficiaries and decedent have suffered great pain and suffering, emotional distress, mental anguish, and monetary damages.

35.   The defendants' conduct was negligent, grossly negligent, reckless, wanton, willful and/or intentional.

WHEREFORE, plaintiff demands judgment against the defendants in an amount not less than $ 10,000,000 in compensatory damages, together with the costs of this proceeding, and other such relief as they may be entitled.

## COUNT IV

### (Misrepresentation)

36.   Plaintiff realleges and adopt by reference the averments contained in paragraphs 1-235, inclusive, the same as if fully set out herein.

37.   Defendants negligently, recklessly, wantonly, willfully, or intentionally misrepresented material facts to the deceased concerning the safety of the Kawasaki Prairie 650, and in particular the effects of the reverse override button and the general

safety issues identified in paragraphs 4 -22 above .

38.   As a direct and proximate result of defendants' misrepresentations of said product, the deceased purchased the Prairie 650 ATV,  was injured, and ultimately died from his injuries.   The conduct of each defendant combined and concurred, and as a proximate consequence thereof, the plaintiff's beneficiaries and decedent have suffered great pain and suffering, emotional distress, mental anguish, and monetary damages.

39.   The defendants are guilty of fraudulent or deceitful misrepresentation.

40.   Alternatively, the defendants are strictly liable for their misrepresentations under *Section 402B of the Restatement (Second) of Torts (1965).*

41.   Alternatively, the defendants are guilty of negligent misrepresentation under *Section 552 of the Restatement (Second ) of Torts (1977).*

WHEREFORE, plaintiff demands judgment against the defendants in an amount not less than $ 10,000,000 in compensatory damages, together with the costs of this proceeding, and other such relief as they may be entitled.

## COUNT V

### (Breach of Implied Warranty)

42.   Plaintiff realleges and adopt by reference the averments contained in paragraphs 1-41, inclusive, the same as if fully set out herein.

43.   Defendants' conduct constitutes breach of implied warranty under Tennessee law.

44.  As a direct and proximate result of defendants' tortious conduct, the deceased

was injured and ultimately died from his injuries.   The conduct of each defendant combined and concurred, and as a proximate consequence thereof, the plaintiff's beneficiaries and decedent have suffered great pain and suffering, emotional distress, mental anguish, and monetary damages.

WHEREFORE, plaintiff demands judgment against the defendants in an amount not less than $ 10,000,000 in compensatory damages, together with the costs of this proceeding, and other such relief as they may be entitled, including reasonable attorney fees.


## COUNT VI

### (Punitive Damages)

45.   Plaintiff realleges and adopt by reference the averments contained in paragraphs 1 - 44, inclusive, the same as if fully set out herein.

46.   With respect to all Counts of this Complaint, defendants have acted intentionally, fraudulently, maliciously, or recklessly to the extent that the imposition of punitive damages is warranted under <u>Hodges v.  S.C. Toof & Company</u>, 833 S.W. 2d 896 (Tenn. 1992).

47.   Plaintiff hereby requests punitive damages equal to three to five (3 -5) times the amount of compensatory damages awarded.


**The certification by Thida Whirley in the original complaint is hereby reaffirmed, adopted, and incorporated by reference.**

**Plaintiff demands trial by struck jury on all counts herein.**

Respectfully Submitted,


/s/  Murray H. Gibson, Jr.
/s/ Steven W. Money
/s/ Van D. Mcmahan
Alabama Bar Number  ASB-3830-N60M
Alabama Bar Number  ASB-4992-T83M
Tennessee Bar Number BPR #022385

Email: rgibson@grmlawfirm.com
           smoney@grmlawfirm.com
           vmcmahan@bellsouth.net


**Of Counsel:**
Van D. McMahan, Esq.
ATTORNEY AT LAW
188 West Houston Avenue
Selmer, Tennessee 38375
(731) 645-7222
(731) 645-8833 fax
Email:  vmcmahan@bellsouth.net

Murray H. Gibson, Jr.
Steven W. Money
GIBSON, RODGERS & MONEY, LLC
2315 9th Street, Suite 3-B
Tuscaloosa, Alabama  35401
(205) 342-9000
(205) 342-9111 fax
Email:  rgibson@grmlawfirm.com
           smoney@grmlawfirm.com


## CERTIFICATE  OF  SERVICE

I hereby certify that on January 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Charles B. Lewis, Esq.**
**LEWIS, KING, KRIEG & WALDROP, P.C.**
**One Centre Square**
**620 Market Street, Fifth Floor**
**P. O. Box 2425**
**Knoxville, Tennessee  37901**
**(865) 546-4646**

**Robert Miller, Esq.**
**BOWMAN AND BROOKE, LLP**
**879 West 190th Street, Suite 700**
**Gardena, California 90247**
**(310) 768-3068**

**Tim Wade Hellen, Esq.**
**FARRIS, MATHEWS, BRANAN, BOBANGO, HELLEN & DUNLAP, P.C.**
**One Commerce Square, Suite 2000**
**Memphis, Tennessee 38103**
**(901) 259-7100**

<u>**OF COUNSEL**</u>**:**
/s/  Murray H. Gibson, Jr.
Alabama Bar Number  ASB-3830-N60M
Email: rgibson@grmlawfirm.com